# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**MARILYNN THOMASON,**<br><br>     **Debtor.** | **Bankruptcy Case<br>No. 21-40435-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

  Marilynn Lynn Thomason, Idaho Falls, Idaho Debtor pro se.

  Louis V. Spiker, Boise, Idaho, Attorney for WaFd Bank, fka Washington Federal Savings.

### *Introduction*

  Before the Court is debtor Marilynn Thomason's ("Debtor") objection to Proof of Claim No. 1 ("POC") filed by WaFd Bank, fka Washington Federal Savings ("Bank") in this chapter 13 case.[1]  Claims Reg. No. 1-1.  The POC was timely filed on September 24, 2021, wherein the Bank claimed a debt in the amount of $145,230.80 secured by a lien on real property located in Madison County, Idaho.  *Id.* Attached to the POC are copies of various documents including an accounting, a promissory note, addendum to note, additional advance note, a recorded deed of trust and addendum thereto and a recorded

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

additional advance agreement. *Id.* The deed of trust and additional advance agreement refer to real property located in Madison County, Idaho. The deed of trust, recorded on 08-28-2003 as instrument no. 306363, and the additional advance agreement, recorded on 07-27-2004 as instrument no. 313629, describe the property as follows:

COMMENCING AT THE SOUTH 1/4 CORNER OF SECTION 2 TOWNSHIP 5 NORTH RANGE 39 EAST BOISE MERIDIAN MADISON COUNTY IDAHO (SAID POINT IS AN ALUMINUM CAP ON A 5/8" STEEL ROD) AND RUNNING THENCE NORTH 89 DEGREES 27'12" WEST 782.00 FEET ALONG THE SECTION LINE MORE OR LESS TO A COUNTY ROAD RIGHT OF WAY THENCE NORTH 0 DEGREES 16'48" WEST 1082.00 FEET TO THE TRUE POINT OF BEGINNING THENCE EAST 650.00 FEET THENCE NORTH 0 DEGREES 16'48" W 272.00 FEET TO A COUNTY ROAD THENCE WEST 650.00 FEET TO A COUNTY ROAD INTERSECTION THENCE SOUTH 0 DEGREES 16'48" EAST 272.00 FEET TO THE TRUE POINT OF BEGINNING. LESS COUNTY ROAD RIGHT OF WAYS.

*Id.* at Exs. B, D; Exs. 209, 210.

That property is described in the deed of trust as having the address of "2616 South 3000 West, Rexburg, Idaho 83440" ("Subject Property"). Ex. 209, p. 2.[2] Debtor timely objected to the POC.

### *Procedure Prior to the Evidentiary Hearing*

On October 7, 2021, the Debtor objected to the POC and set the objection for a telephonic hearing on November 9, 2021. Doc. Nos. 67 and 68. Thereafter, on October 22, 2021, the Debtor filed a brief and affidavit in support of her objection. Doc. Nos. 80 and 81. On November 2, 2021, Bank filed a written response to the objection, Doc. No. 89, along with a request to take judicial notice of certain documents, Doc. No. 91. On November 8, 2021, Bank filed a Declaration of Counsel in Support of Request to Take

---

[2] That street address also appears on the top of the Note signed by the Debtor. *See* Claims Reg. No. 1-1 at Ex. A.

MEMORANDUM OF DECISION − 2

Judicial Notice.  Doc. No. 98.  Most of the documents described in the request for judicial notice and counsel's declaration arise out of the case of *Washington Federal, et al. v. The Estate of Byron T. Thomason, et al.,* Case No. CV-2017-432, which case was filed in the District Court of the Seventh Judicial District of the State of Idaho, in and for Madison County (hereinafter "State Case").  Debtor opposed the request to take judicial notice but never set the matter for hearing.  Doc. No. 115.  As a result, the Court was not asked to rule on it prior to a hearing conducted on January 20, 2022, after which the request to take judicial notice became moot.

The Court conducted a telephonic hearing on the Debtor's objection to the POC on November 9, 2021.  At that hearing, and consistent with Rule 9014, L.B.R. 9014.1 and 3007.1, the Court set the matter for an evidentiary hearing to be conducted on January 3, 2022.  Doc. No. 100.  The local rules applicable in the District of Idaho require participants to a hearing on an objection to a proof of claim to file a list of witnesses and a list of exhibits, and to exchange copies of any exhibits not later than 7 days prior to the scheduled hearing.  LBR 3007.1.  To alleviate any confusion, at the November 9, 2021 hearing, the Court expressly ordered that on or before December 27, 2021 (7 days prior to the January 3rd hearing) the parties were to exchange and file with the Court both a witness list and an exhibit list disclosing all witnesses and exhibits that they intended to call in their case-in-chief.  The Court further required the parties to deliver to one another copies of any proposed exhibits they intended to introduce at the evidentiary hearing. Doc. No. 100.

MEMORANDUM OF DECISION – 3

Thereafter on December 20, 2021, the Debtor filed an exhibit list and a witness list, which did not disclose a witness or any exhibit but stated, "(THOMASON)'s witness list does not list any names as being called to testify, but (THOMASON) will call any and all necessary persons/entities under cross-examination and/or rebuttal."  Doc. No. 121 at p. 2.  Regarding exhibits, the Debtor stated: "(THOMASON)'s exhibit list does not have any exhibits listed as to be needed to supplement (THOMASON)'s already certified and filed exhibits in this contested matter other than (THOMASON) will submitted [sic] any and all necessary rebuttal exhibits, as needed." *Id.*  The balance of Debtor's exhibit and witness list document contains various arguments alleging that Bank was required to disclose documents prior to that date, that Bank was required to respond to various allegations made by the Debtor in pleadings and affidavits previously filed by her, and that Debtor was going to cross examine any party whose name appears on documents and exhibits and named certain Bank attorneys and employees.  Doc. No. 121.  Bank filed its witness list and its exhibit list on December 27, 2021.  Doc. Nos. 131 and 132.

On December 28, 2021, a telephonic hearing was conducted based on Bank's request to call a witness via Zoom at the evidentiary hearing, due to a concern about COVID infection outbreaks.  Doc. Nos. 118 and 120.  Ultimately, the Debtor and Bank agreed to conduct the entire evidentiary hearing using Zoom and the Court approved that joint request.

MEMORANDUM OF DECISION − 4

At that hearing, however, the issue of the disclosure of witness lists and exhibit lists was discussed. Debtor alleged that she had not been served with the Bank's witness list, exhibit list, or any exhibits as of December 28, 2021. While those lists and exhibits were filed on the Court's docket, they were not hand-delivered to the Debtor but rather mailed to her address, which is apparently a mailbox located at a UPS annex run by a private business in Idaho Falls, Idaho. Further, the Court informed the Debtor that her witness and exhibit list, Doc. No. 121, was not acceptable to the Court. Rather, under the local rules she was required to disclose particular witnesses she intended to call and to describe exhibits she intended to introduce on an exhibit list and to exchange those exhibits with Bank's counsel. The Court informed Debtor that it was not appropriate to invite either the Court or counsel to mine the docket for documents Debtor might introduce as exhibits and for witnesses she might call.

Thereafter, the Court continued the evidentiary hearing to January 13, 2022 in order to permit the Debtor to receive and review Bank's exhibits and witness list, and further required the Debtor to file and serve her rule-compliant exhibit list and witness list by January 3, 2022. Despite that order, the Debtor failed to file a witness list or exhibit list as required by the local rules and the November 9, 2021, order.[3]

---

[3] Rather than file the exhibit list and witness list, on January 3, 2022, the Debtor filed a document she titled "THOMASON's RESPONSE to 12-28-2021 WaFd Non-Notice Hearing." Doc. No. 137. In this document, the Debtor elected to argue about the timing of the December 28, 2021 hearing and her lack of notice of that hearing, and argued that she did not need to disclose witnesses or exhibits until she had reviewed the witnesses and exhibits identified by Bank. *Id.* Further, Debtor incorrectly construed the Court's verbal order on December 28, 2021 as one requiring her to disclose proper rebuttal exhibits, for which she cited rules such as [Civil Rules] 26(a)(2)(B) and (C), 26(a)(3)(A), and 26(a)(2)(ii), which are not applicable in Bankruptcy cases pursuant to Rule 9014. While the Court did not order that Debtor

MEMORANDUM OF DECISION – 5

On January 13, 2022, Debtor and Bank appeared for the Zoom hearing.  At this hearing, it became evident that Bank had mailed its exhibits to Debtor in a large stack, unbound and possibly neither tabbed nor marked.  However, Bank recognized its mistake in doing so and had subsequently sent to the UPS mailbox a binder containing documents labelled 200 through 215 that were tabbed appropriately.  It also represented that in that binder was another copy of the witness list, an exhibit list, and an affidavit of Richard Miller.  The Debtor responded that she had not yet received the binder.  The Bank's attorney argued that service on the Debtor was severely complicated by the fact that she will not accept deliveries at her home, does not have her own email account but uses her son's college account which has certain restrictions, and that she uses a private UPS postal annex that restricts deliveries.

The Bank also argued that the pre-marked exhibits were documents the Debtor has already received, including the Bank's POC and the attachments thereto, as well as the documents that were attached to the Declaration of Counsel in Support of Request to Take Judicial Notice, Doc. No.  98.  The Court recessed the hearing and required the

---

disclose rebuttal exhibits, it appears that the exhibits she deems rebuttal are in fact exhibits that support her objection.  Thus, the documents she refers to in Doc. No. 137 appear to be part of her case-in-chief rather than documents that she may introduce in response to evidence introduced by the Bank.  In her objection she also restates many of her arguments in support of her objection to the POC but does not address why she should be relieved of the duty to disclose.  In short, all of the arguments Debtor advances present neither cause for relief from the Court's order nor reason why the requirements of LBR 3007.1 and 9014.1, which require all parties, represented or not, to disclose witnesses and identify exhibits at least 7 days prior to the hearing, are inapplicable to her.  Indeed, it is interesting that Debtor cites the 7-day requirement contained in LBR 9014.1, see Doc. No. 137 at p. 3, and demands that Bank be held to that disclosure requirement, while at the same time chooses to ignore the same rule when applied to her.  The Court gave her ample opportunity to comply with the rules and she failed to take that opportunity.

MEMORANDUM OF DECISION – 6

Debtor to call the UPS annex.  When the hearing reconvened, Debtor reported that a package was in her mailbox.  The Court again continued the hearing, this time to January 20, 2022, in order to permit the Debtor to receive and review Bank's bound and tabbed exhibits prior to the evidentiary hearing.

At the commencement of the hearing on January 20, 2022, the Court asked the Debtor to present her evidence.  Despite not properly disclosing any witnesses or exhibits, Debtor argued that she had satisfied her evidentiary burden prior to that date and the burden had shifted to Bank.  In response, Bank orally moved for the Court to overrule Debtor's objection to its POC on the grounds that she had not introduced any evidence and therefore had failed to meet her burden.

Nevertheless, Bank then moved to present additional written evidence in support of its claim.  It sought admission of certain exhibits which consisted of the recorded deed of trust and attached addendum, the additional advance payment agreement recorded in Madison County, and various documents entered by the court in the State Case.  Exs. 209–215.  Each of those exhibits were certified by the appropriate custodian and thus are self-authenticated public records and were admitted under Fed. R. Evid. 902(4).  Bank argued that the exhibits admitted into evidence demonstrate the validity of its POC and provide an independent basis for overruling Debtor's objection.

At the close of the hearing, the Court took the objection under advisement.  After considering the briefing, exhibits, and oral argument presented, as well as the applicable

MEMORANDUM OF DECISION − 7

law, the Court issues the following decision which resolves the objection.  Fed. R. Bankr.
P. 7052; 9014.

### *Applicable Law*

This Court has subject matter jurisdiction and the constitutional authority to enter
a final decision on this claim objection by virtue of 28 U.S.C. §§ 1334(a) and
157(b)(2)(B) as it concerns the allowance of a claim filed in the bankruptcy case.
Pursuant to general order, the Idaho District Court has referred all cases under Title 11 to
this Court under 28 USC § 157(a).

The Debtor is representing herself.  While the Court makes "reasonable
allowances" for pro se litigants and construes their pleadings and papers liberally,
nevertheless, it is still the pro se litigant's burden to establish a proper legal basis for any
relief sought or defense raised, and to follow the requirements of the Bankruptcy Code,
Bankruptcy Rules, and Local Bankruptcy Rules.  *Reynard v. Karass (In re Saito Bros
Inc.)*, 560 B.R. 540, 545 (Bankr. D. Idaho 2016); *Zivkovic v. Southern Cal. Edison Co.,*
302 F.3d 1080, 1087 (9th Cir. 2002); *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir.
BAP 2002).

Further, as shown by the procedural history detailed above, the Court has agreed
to several continuances to permit the Debtor to not only proceed in accordance with the
rules but also to be given additional time to review Bank's proposed exhibits.

MEMORANDUM OF DECISION − 8

*Analysis*

**1.   Debtor bears the burden of proof on her objection to Bank's claim**

Pursuant to the Bankruptcy Code, a proof of claim is deemed allowed unless a party objects. § 502(a). The Bankruptcy Rules are even more explicit. Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." This operates as an evidentiary presumption that is rebuttable. *Litton Loan Servicing, Inc. v. Garvida (In re Garvida),* 347 B.R. 697, 706 (9th Cir. BAP 2006).

Once a party files an objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502–22 (15th ed. 1991)); see also *Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.),* 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd,* 91 F.3d 151 (9th Cir. 1996); *In re Kaskel,* 269 B.R. 709, 713 (Bankr. D. Idaho 2001). To defeat Bank's POC, then, Debtor, as the objecting party, must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm,* 931 F.2d at 623; *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000); *Litton Loan Servicing, Inc.,* 347 B.R. at 706. Once the objecting party "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of

MEMORANDUM OF DECISION − 9

the evidence." *In re Kaskel*, 269 B.R. at 713 (quoting *Ashford v. Consol. Pioneer Mort.*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).

Here the Debtor objected to the claim, but beyond voicing her own arguments, chose not to submit any exhibits or call any witnesses. The Court concludes this is insufficient to shift the burden to Bank.

Moreover, Debtor argued that she satisfied her evidentiary burden by submitting arguments and filing affidavits supporting those arguments on the Court's docket. On multiple occasions in this case, however, the Court has ruled that it would not take judicial notice and would not accept evidence based on affidavits absent the consent of the parties. No consent was forthcoming.[4] Accordingly, the parties were required to follow the local and bankruptcy rules and file witness and exhibit lists and to mark and exchange exhibits. As such, Debtor's argument that her pleadings and affidavits were sufficient to shift the burden to Bank is not correct.

Because Debtor presented no evidence to support her objection to Bank's POC, the burden did not shift to Bank to persuade the Court that the claim was valid. Accordingly, Debtor's objection to Bank's claim is overruled on that basis alone.

---

[4] Indeed, the Debtor made clear in various objections that she would not agree to allow Bank to submit its case based on requests for judicial notice or written submissions, articulating that she wanted to cross examine any witness Bank introduced.

MEMORANDUM OF DECISION – 10

The Bank, however, sought admission of additional evidence in the form of self-authenticated documents, which the Court will now consider.

### 2. Admitted evidence in opposition to objection to proof of claim

While the Debtor did not submit any evidence, she nevertheless advanced multiple arguments in support of her objections to the POC.  Those arguments can be summarized as follows: First, she raises various objections asserting that the name of the claimant on Bank's POC is incorrect, and that the claim and attachments are not verified or certified by an affidavit.  Second, she argues that Bank does not hold a valid lien.  Third, she contends she is not obligated to pay any amount to Bank for various reasons.  Finally, she argues that Bank's POC is substantially overstated.  The Court will address these arguments.

### a.   There are no material deficiencies in the proof of claim

Debtor objects to Bank's POC on the grounds that the named claimant is "WaFd Bank fka Washington Federal Savings" but on the fourth page by the signature block the "I am the creditor" box is checked, rather than the "I am the creditor's attorney or authorized agent" box, after which "Ronald R. Miller" signed the form.  Claims Reg. No. 1-1.  Debtor is correct in her reading of the form, but that error does not invalidate the POC.  Rather, the error is easily identified and explained by the balance of the POC form.  First, that Bank is the claimant is noted on the first page of the form.  Second, Ronald R. Miller signed the form on behalf of Bank as its Vice President and Collection Manager

MEMORANDUM OF DECISION − 11

and included Bank's address. *Id.* As such, the form is clear as to who the claimant is, and Debtor's objection on this basis is overruled.

Next, Debtor contends that the POC should be disallowed because the Bank, Ronald R. Miller, and other Bank employees did not support the POC or the attachments thereto by affidavit or certification. The Court disagrees. The Bank used the official proof of claim form as required by Rule 3001(a). Moreover, Rule 3001 requires certain documentation: Rule 3001(c)(2)(A) requires an itemized statement of interest, fees, expenses and other charges; Rule 3001(c)(2)(B) requires that claimant disclose an amount necessary to cure; Rule 3001(c)(2)(C) requires an escrow account statement; and Rule 3001(d) requires proof of perfection if a lien is claimed. There is no requirement, however, for additional affidavits, certifications, or other documents. Bank's POC is in material compliance with this rule as it includes the amount of the claim, a detailed spreadsheet of additional charges beyond the principal balance, contains a stated cure amount, and the attached documents include the note and amendments obligating the Debtor. Claims Reg. No. 1-1. Finally, Bank attached the recorded deed of trust and the recorded additional payment agreement, evidencing proof of the perfection of its lien. The Debtor's objection based on alleged failures to disclose other information or to file additional affidavits or certifications is therefore overruled.

/////

MEMORANDUM OF DECISION – 12

### b. The record supports the validity of the debt, the security for the debt, and most of the amount of Bank's POC

As stated above, the Debtor's other arguments concern the lien claimed by the Bank on the Subject Property, the Debtor's obligation to the Bank, and the monetary amounts in the POC.

The Bank introduced evidence through certified self-authenticating documents that demonstrate that Debtor has or should have raised in the State Case the arguments she makes here. The court in the State Case, after considering a number of arguments concerning fraud, service, standing, lack of a lien in the Subject Property, whether there was a default in payments, as well as other arguments, ultimately entered several decisions. In a written decision, the court determined that Bank was entitled to summary judgment, over the objections raised by Debtor on most of the issues pertinent to the facts in the bankruptcy case. Ex. 211. For example:

1. The court in the State Case found it had subject matter and personal jurisdiction despite Debtor's multiple objections. Ex. 211 at p. 6.

2. It found that Debtor was properly served with the complaint in that action over the objection of the Debtor. *Id*.

3. It found that Bank had standing to bring the lawsuit over the objection of the Debtor. *Id.* at p. 5.

4. It found Debtor did not properly plead fraud regarding her allegations that Bank forged and altered documents and dismissed those allegations. *Id.*

MEMORANDUM OF DECISION − 13

5. It identified certain loan documents and found that Debtor, among others, had executed those loan documents which included a deed of trust and advance agreement. *Id.* at p. 1.

6. It found that Debtor was obligated to pay Bank under the loan documents and that Debtor had failed to make a payment under the loan documents since March 6, 2015. *Id.* at p. 6.

7. It found Bank's deed of trust required Debtor to pay real property taxes and insurance and that Debtor had failed to pay property taxes from 2011–2019, thereby requiring Bank to pay them to protect its security in the Subject Property. *Id.* at p. 7.

8. It found that Bank, having met its burden of proof under Idaho Code § 45-1503, was entitled to foreclose its deed of trust lien. *Id.* at p. 7.

Moreover, the State Case court found that Bank paid the following:

1. Delinquent taxes for 2011–2014 in the amount of $11,266.67. *Id.* at p. 2[5]

2. Delinquent taxes for 2015–2019 in the amount of $10,942.69. *Id.*

---

[5] Debtor has argued that Bank is not entitled to $11,045.67 described in the POC, Claims Reg. No. 1-1, because she was current on the debt in April of 2015. Thus, she argues, there could not be a negative escrow balance of $11,045.67 on April 1, 2015, which is the first day of the Bank's accounting on the attachments to the POC. This issue over her obligation for the real property taxes paid by Bank was raised or could have been raised before the court in the State Case which found that there was a negative escrow balance in a similar amount of $11,226.67 through 2014. The attachment to the POC which itemizes a default under the escrow, approximately four months after December 31, 2014, is substantially the same dollar amount. In actuality, Bank's starting balance in its POC is $181 less than the amount in the State Case decision. This finding from the State Case supports Bank's negative starting escrow balance contained in the attachment to the POC.

MEMORANDUM OF DECISION – 14

3. Insurance premiums in the amount of $1,095.24. *Id.*

4. Title search costs in the amount of $401.00. *Id.*

5. Attorney's fees in the amount of $30,526.64 in a Federal District Court action that the Debtor had instituted against Bank. *Id.*

Finally, the State Case court found:

1. That the $17,500 note, additional advance note, deed of trust and the additional advance agreement were the loan documents at issue in that case. *Id.* at p. 1.

2. There was unpaid principal owed in the amount of $37,771.75; interest had accrued as of June 28, 2019, in the amount of $10,625.49; and late charges were incurred in the amount of $400.95, with interest accruing at $6.82 per day and late charges at $14.85 per day. *Id.*

3. That Bank could foreclose on the real property[6] identified in the lawsuit. *Id.* at pp. 1, 7.

---

[6] The Debtor failed to submit any evidence to this Court about whether Bank held a valid lien on the real property identified in the deed of trust. She raised several objections in which she contended that Bank either never held a lien or no longer held a lien. To support this contention, Debtor attached to several objections a copy of a two-page document entitled "Notice of Trustee Sale," *e.g. see* Doc. Nos. 56 and 81. She also attached a copy of a portion of a local newspaper in which the Notice of Trustee Sale was published in 2008. Using this "evidence," Debtor contends that Bank does not hold a lien in the Subject Property commonly known as 2616 South 3000 West, Rexburg, Idaho 83440, or, if it did, it had been divested of that lien. She argues that the document refers to the recorded deed of trust and additional advance agreement at issue before this Court, but it refers to an address for property commonly known as "1844 South 3000 West, Rexburg, Idaho." This, the Debtor argues, shows that the Bank either never had or lost its lien in the Subject Property identified as security in Bank's POC. Even if this evidence were properly before this Court, it would do little to aid the Court here. While the document was created for some purpose, the Court has no evidence of service on the Debtor or, more importantly, whether a sale was ever conducted on the date listed on the Notice of Trustee Sale. Moreover, there is no evidence that Bank was paid or released its lien. It identifies a different common address, which Debtor argues is ¼ mile away, but does not contain a legal description. For purposes of the matter before this Court, even if

MEMORANDUM OF DECISION − 15

In addition to the summary judgment decision, Bank offered Ex. 214, which was admitted. That exhibit consists of a certified copy of an Amended Judgment, Decree of Foreclosure and Order of Sale docketed in the State Case on May 31, 2021 ("Amended Judgment"). Ex. 214.[7] The Amended Judgment establishes that the State Court held as follows:

1.   Bank obtained a monetary judgment against the Debtor, among other defendants, for $109,829.46. Debtor's liability is joint and several with other defendants. Ex. 214 at p. 2.

2.   Bank holds a valid and enforceable lien in the real property disclosed as:

> COMMENCING AT THE SOUTH 1/4 CORNER OF SECTION 2 TOWNSHIP 5 NORTH RANGE 39 EAST, BOISE MERIDIAN MADISON COUNTY, IDAHO (SAID POINT IS AN ALUMINUM CAP ON A 5/8" STEEL ROD) AND RUNNING THENCE NORTH 89 DEGREES 27'12" WEST 782.00 FEETALONG THE SECTION LINE MORE OR LESS TO A COUNTY ROAD RIGHT OF WAY THENCE NORTH 0 DEGREES 16-48" WEST 1,082.00 FEET TO THETRUE POINT OF BEGINNING THENCE EAST 650.00 FEET THENCE NORTH 0 DEGREES 16'48" WEST 272.00 FEET TO A COUNTY ROAD THENCE WEST 650. 00 FEET TO A COUNTY ROAD INTERSECTION THENCE SOUTH 0 DEGREES 16'48" EAST 272.00 FEET TO THE TRUE POINT OF BEGINNING. LESS COUNTY ROAD RIGHT OF WAYS.
>
> Said real property is commonly known as: 2616 South 3000 West, Rexburg, ID 83440 ("Subject Property") pursuant to the Deed of Trust dated August 28, 2003, and recorded on August 28, 2003, as Instrument No. 306363, records of Madison County and the Additional Advance Agreement dated July 26, 2004, and recorded

---

admitted, the "evidence" is merely an unauthenticated document that does little to overcome Debtor's burden of proof or to cast doubt on the findings of the court in the State Case.

[7] The Court also admitted Bank's Ex. 212, which consists of a certified copy of the original Judgment, Decree of Foreclosure and Order of Sale entered in the State Case on December 18, 2020. Ex. 212. Since no effort was made to distinguish between the two documents, the Court will utilize the Amended Judgment.

MEMORANDUM OF DECISION − 16

on July 27, 2004, as Instrument No. 313629, records of Madison County (collectively "Deed of Trust). Plaintiff's lien on the Subject Property is superior to any right, title, claim, lien or interest on the part of any of the named Defendants…" *Id.* at pp. 2–3.

The description of the loan documents, the recorded deed of trust, and recorded additional advance agreement are the same as attached to Bank's POC. They were offered as Exhibits 209 and 210 and were admitted by the Court as self-authenticated documents under Fed. R. Evid. 902(4). The legal description is the same as designated in Bank's recorded documents, and as such, describes the Subject Property. Thus, the court in the State Case ruled on the very same issues that are raised by Debtor in this case.

The *Rooker-Feldman* doctrine prevents this Court from re-examining the findings and conclusions of the court in the State Case. This doctrine derives its name from two Supreme Court cases: *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). It bars lower federal courts, such as this bankruptcy court, from exercising jurisdiction "to review the final determinations of a state court in judicial proceedings." *Benavidez v. Cty. of San Diego,* 993 F.3d 1134, 1142 (9th Cir. 2021) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001)). In this way, Debtor cannot come to federal court to seek "what in substance would be appellate review of the state judgment." *Benavidez*, 933 F.3d at 1142 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647 (1994)).

Moreover, Debtor's desire for this Court to re-examine the findings and holdings of the State Case would likely be barred by the doctrine of issue preclusion. Because the

MEMORANDUM OF DECISION − 17

Amended Judgment found in Ex. 214 was entered by an Idaho court, then this Court would apply Idaho's preclusion law. *Cheirett v. Biggs (In re Biggs)*, 563 B.R. 319, 324 (Bankr. D. Idaho 2017) (citing *Plyam v. Precision Dev., LLC (In re Plyam*), 530 B.R. 456, 462 (9th Cir. BAP 2015)).

Under Idaho case law, there are five elements required in order for issue preclusion to bar the relitigation of an issue determined in a prior legal proceeding: 1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; 2) the issue decided in the prior litigation was identical to the issue presented in the present action; 3) the issue sought to be precluded was actually decided in the prior litigation; 4) there was a final judgment on the merits in the prior litigation; and 5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Cheirett v. Biggs*, 563 B.R. at 324 (citing *Berkshire Invs., LLC v. Taylor,* 153 Idaho 73, 278 P.3d 943, 951 (2012); *Ticor Title Co. v. Stanion*, 144 Idaho 119, 157 P.3d 613, 618 (2007); *Catmull v. Vierra (In re Vierra),* 08.2 I.B.C.R. 56, 59–60 (Bankr. D. Idaho 2008) (quoting *Dominguez v. Elias (In re Elias)*, 302 B.R. 900, 911 (Bankr. D. Idaho 2003)). As argued by Bank in its written reply, the summary judgment decision and ultimately the Amended Judgment issued in the State Case would likely be given preclusive effect by this Court.

As such, this Court concludes Bank has established the indebtedness described in its POC and the Court will allow the claim, with the revisions described below.

MEMORANDUM OF DECISION − 18

### c. Allowability of the dollar amount of Bank's claim

The exhibits from the State Case establish that as of January 13, 2021,[8] Bank was

owed $109,829.46 with interest accruing thereon. Ex. 214. Other documents admitted

from the State Case support additional amounts due to Bank, as follows:

1. Order entered July 14, 2021 awarding Bank attorney's fees in the amount of

   $6,390.29 in the State Case. Ex. 215.

2. Order entered March 24, 2021 awarding Bank attorney's fees in the amount of

   $14,634.50 and costs in the amount of $4,250.77 and $97.50.[9] Ex. 213.

Thus, orders entered in the state court establish Bank's monetary claim of

$109,829.46 + $6,390.29 + 14,634.50 +$4,250.77 + 97.50 = $135,202.52 plus interest

accruing.[10] The POC, however, asserts that Debtor owes $145,230.80[11] as of the July 16,

2021 petition date, a difference of $10,028.28.

---

[8] The Amended Judgment, Decree of Foreclosure, and Order of Sale was entered by the court in the State Case on May 21, 2021, but was entered *nunc pro tunc* effective from January 13, 2021, which is the date of the original Judgment. Exs. 212 at p. 1; 214 at p. 4.

[9] At the hearing, Debtor contended these two orders are not final as they are neither titled as judgments nor recite that they are appealable orders. As there is no evidence that the orders have been reversed or rescinded, the Court is unconcerned with whether they are final or appealable as it determines Bank's allowable claim. Rather, the orders support Bank's entitlement to some attorney fees as part of its POC.

[10] The orders awarding fees and costs establish that Bank has been awarded these monetary sums. Those orders are silent as to which of the Defendants the fees and costs are assessed against. As the monetary liability of $109,829.46 was assessed against the Debtor and other defendants jointly and severally, however, there is nothing to suggest that the award of fees and costs would be otherwise. None of the State Case documents admitted into evidence support any inference that the monetary awards were subject to specific allocation between defendants.

[11] In the Debtor's multiple objections to Bank's POC, she asserts that Bank has claimed damages against her for $170,000. There has been no evidence offered to support this assertion. Before this Court, Bank

MEMORANDUM OF DECISION – 19

The State Case documents provide guidance to the Court as to some of that difference, as follows.

First, the Court will consider the question of interest.  Bank's POC shows $15,658.57 in accrued interest as of the petition date.  Claims Reg. No. 1-1.  The Amended Judgment in the State Case does not specifically itemize how much interest has accrued through January 13, 2021.  It is apparent from the summary judgment decision, however, that the court in the State Case included interest, along with principal, costs, advances, and fees, in the total judgment amount of $109,829.46, as it concluded that, as of June 28, 2019, a total of $10,625.49 in interest had accrued on the debt and continued to accrue in the amount of $6.82 per day.  Ex. 211 at p. 2.  While this Court was not given any evidence in the State Case documents to specifically identify all interest awarded in that case, it can, however, calculate an amount of interest accruing on the Amended Judgment.

The Amended Judgment provides that interest accrues on the judgment at the legal rate from January 13, 2021.  Ex. 214 at p. 2.  In Idaho, the legal rate on judgments entered between July 1, 2020, and June 30, 2021, is 5.25% calculated on a 365-day year.  *See* Idaho Code § 28-22-104(2) and Idaho State Treasurer published rates at https://sto.idaho.gov/Banking/Legal-Rate-of-Interest.  Calculating the annual interest on $109,829.46 at 5.25% equals interest in the amount of $5,766.05 per year, or $15.7974

---

is claiming $145,230.80 as of the Petition Date; any objection based on an assertion that Bank is claiming that $170,000 is owed is overruled.

MEMORANDUM OF DECISION − 20

per day.  There are 184 days between January 13, 2021, and the petition date of July 16, 2021.  As such, 184 days at $15.7974 per day equals $2,906.72 in additional interest accruing on the Amended Judgment.

This analysis does not calculate interest accruing under Idaho law on either of the orders awarding attorney's fees docketed on July 14, 2021, and March 24, 2021.  Exs. 213, 215.

Next, in its POC, Bank disclosed an escrow advance, made after the January 13, 2021 Amended Judgment date, in the amount of $1,456.57 advanced on June 3, 2021.  Claims Reg. No. 1-1 at p. 11.

Bank also asserts it is entitled to monthly late fees incurred after the Amended Judgment.  *Id.* at pp. 10–11.  The Court has not been afforded any legal argument why late fees can be assessed after the deed has been accelerated and memorialized in an Amended Judgment.  Thus, the seven late fees of $14.85 each, assessed between the date of the Amended Judgment and the petition date and totaling $103.95, as itemized in the POC, are disallowed.  Debtor's objection is sustained as to $103.95.[12]

---

[12] Bank argued that if the Debtor is permitted to cure the default owed to it under a confirmed chapter 13 plan, then late fees for each monthly payment could be included along with interest accruing at the contract rate rather than the judgment rate.  While this may be correct, at this point in Debtor's bankruptcy case, such fees and interest are not allowed on this record.  No plan has been proposed to pay or cure Bank's claim.  Should Debtor propose such a plan, those calculations might be clarified.

MEMORANDUM OF DECISION – 21

Based on the evidence before it, the Court finds Bank has established[13] entitlement to an allowed secured claim[14] in the amount of $139,565.81 based on the judgments and orders entered in the State Case.

This is calculated as follows:

$109,829.46 (Amended Judgment)
+    6,390.29 (attorney's fees from 7/14/21 order)
+  14,634.50 (attorney's fees from 3/24/21 order)
+    4,250.77 (costs from 3/24/21 order)
+        97.50 (costs from 3/24/21 order)
+    2,906.72 (interest 1/13/21 to 7/16/21)
+    1,456.57 (escrow advances dated 6/3/21)
$139,565.81[15]

### Conclusion

The Debtor did not rebut the prima facie validity of Bank's claim and her objection is overruled on that basis. Bank, however, introduced evidence consisting of self-authenticated documents to support its POC. After considering that evidence, the Court finds that Bank established that it holds a valid perfected secured lien on the Subject Property, based on a pre-petition determination by a state court of competent jurisdiction. Also, that Bank is entitled to a monetary claim secured by the Subject

---

[13] The POC contains other charges that Bank may have included in its total. For example, attachments to Bank's POC show numerous disbursements for "AP legal charge" after January 13, 2021, totaling $8,385.83. Because two orders allowing attorney's fees were entered in the State Case after January 13, 2021, on this record, the Court cannot determine how much, if any, of the $8,385.83 should be allowed independent of the fees awarded in the State Case.

[14] No evidence or argument was introduced to dispute that the value of the Subject Property exceeds the amount of the claim.

[15] Because Bank did not show why it is entitled to $103.95 in late fees, that amount is not included in the allowed claim.

MEMORANDUM OF DECISION − 22

Property.  The record before this Court supports a finding that Bank is entitled to an allowed secured claim in the amount of $139,565.81 as of the Petition date.  The balance of $5,664.99 claimed by Bank, which includes $103.95 in late charges, is disallowed.

A separate order will be entered.

DATED:  February 2, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 23